**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL DIVISION |
| vs. | |
| | Criminal No. 13-58 |
| BRANDON J. THOMPSON, et al | |
| Defendant. | |
| | Judge Cathy Bissoon |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS**

AND NOW, comes Defendant, BRANDON THOMPSON a/k/a B-Rock a/k/a Rock a/k/a Rizzle a/k/a Rizzie, by and through his undersigned attorney, and files this Memorandum of Law in support of his Motion to Suppress.

**A. Standing**

As an initial matter, Defendant has standing to challenge the admissibility of intercepted electronic and wire communications in which he was a participant or which involved property/devices which he owned or had a possessory interest--

> any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if the United States unlawfully over-heard conversations of a petitioner himself ....

Alderman v. United States, 394 U.S. 165, 176, reh'g denied, 394 U.S. 939 (1969).

In the instant matter, on at least 14 occasions, the content of oral, wire or electronic communications to which Defendant was a party were intercepted based upon wiretaps of target cell phones belonging to a person other than Defendant. Defendant has standing to challenge the lawfulness of those interceptions. Additionally, while it doesn't appear that any wire interceptions were authorized or conducted directly of the content of communications on any phone belonging to Defendant, he would, obviously, have standing to challenge the lawfulness of those interceptions as

well. Likewise, Defendant has standing to challenge the lawfulness of any direct or indirect tracking or other electronic or wire non-content data or information authorized or obtained with respect to any phone or similar device belonging to him or which is obtained in relation to search or seizure of property belonging to another person.

### B. Interception of Content of Communications

An application seeking authorization to intercept a wire, oral, or electronic communication must comport with the following statutory requirements:

> **(1)** Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
> **(a)** the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
> **(b)** a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;
> **(c)** a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
> **(d)** a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;
> **(e)** a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and
> **(f)** where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the

> failure to obtain such results.

18 U.S.C. § 2518(1) (Procedure for interception of wire, oral, and electronic communications).

> The following statutory remedies exist for a violation of 18 U.S.C. §1518:
>
> **(10)(a)** Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>   **(i)** the communication was unlawfully intercepted;
>   **(ii)** the order of authorization or approval under which it was intercepted is insufficient on its face; or
>   **(iii)** the interception was not made in conformity with the order of authorization or approval.
>
> Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.
>
> \* \* \*
>
>   **(c)** The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

18 U.S.C. § 2518(10)(a), (c).

> When reviewing an application, courts must also bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. Zurcher v. Stanford Daily, 436 U.S. 547, 553-560, ... (1978). The affidavit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant. *See Id.*
>
> These fourth amendment principles are the same in an authorization for a wiretap as in a property search. That the subscriber of the telephone service be suspected of unlawful activity is not a prerequisite to a wiretap authorization. As expressed in the statutory language, what is necessary is probable cause to believe that "an individual

... has committed or is about to commit a particular offense" and that "communications concerning that offense" may be intercepted from a designated facility. 18 U.S.C. § 2518(3) (1982); ....

United States v. Tehfe, 722 F.2d 1114, 1117-1118 (3rd Cir.1983), cert. denied sub nom. Sanchez v. United States, 466 U.S. 904 (1984) (citations and footnote omitted).

An Application—which contained, *inter alia*, an Affidavit in Support of Application signed by Allegheny County Deputy Sheriff Shane R. Countryman—for interception of the content of telephone communications was filed/presented, *inter alia*, at the following times at the following cases:

(1) September 18, 2012 at Misc. No. 12-342 [Target #1: Verizon Mobile phone 412-235-8713 (used by Co-defendant Germany); and Target #2: Verizon Mobile phone 412-302-5110 (registered to Mike Johnson and Felicia Serrano; used by Diamantia Serrano);

(2) October 18, 2012 at Misc. No. 12-342(a) [Target #1: Verizon Wireless phone 412-235-8713 (used by Co-defendant Germany); Target #3: Verizon Wireless phone 412-268-0228 (used by Diamantia Serrano); Target #4: AT&T Mobile phone 330-261-4514 (used by Bryce Harper)];

(3) November 9, 2012 at Misc. No. 342(b) [Target #5: Sprint Mobile phone 412-401-6606 (subscribed to and used by Bryce Harper); Target #6: Sprint Mobile phone 412-901-8562 (registered to and used by Jay Germany)];

(4) December 13, 2012 at Misc. No. 342(c) [Target #7: Sprint Mobile phone 412-607-0599 (subscribed to and used by Antonio Hardin); Verizon Wireless phone 412-518-1973 (used by Antonio Hardin); Target #9: AT&T Mobile phone 412-980-7644 (subscribed to Felecia Daniels and used by Thomas Hopes)]; and

(5) January 16, 2013 at Misc. No. 342(d) [Target #10: AT&T Mobile phone 202-769-7208 (subscribed to prepaid customer and used by unknown male); Target #11: Cricket Communications phone 412-773-3552 (registered to and used by James Walker); Target #12: Verizon phone 412-522-5237; Target #13: T-Mobile phone 412-482-4974 (used by Troy Anderson)].

Each affidavit based, *inter alia*, on "telephone records, telephone communications and associated date". ¶8 of Affidavit at Misc. Nos. 12-342, 12-342(a), 12-342(b), 12-342(c), and 12-342(d). Additionally, the Affiant had not included every fact known to him in the affidavit. See ¶9

of Affidavit at Misc. Nos. 12-342, 12-342(a), 12-342(b), 12-342(c) and 12-342(d). The failure to include all necessary and relevant facts constitutes a violation of 18 U.S.C. §2518(1)(b). As described below, the failure to provide relevant information bearing on the credibility of informants undermines the probable cause determination made by the Court with respect to orders granting the defective wiretap applications.

Informants are used but they are drug users and/or had been arrested in connection with drug transactions. See ¶¶16-17, 36, 39, 42 and 47 of Affidavit at Misc. No. 12-342; ¶¶19-20 of Affidavit at Misc. Nos. 12-342(a) and 12-342(b); ¶¶33-34 of Affidavit at Misc. No. 12-342(c); ¶¶15 and 34-35 of Affidavit at Misc. No. 12-342(d).

CS1 and CS2 were being used for 3 months, both are motivated by potential to receive cash payments for services he renders, and CS1 has one conviction for drug possession. See ¶¶30 and 38 of Affidavit at Misc. No. 12-342. CS1 identifies Defendant as a source of supply for Co-defendant Germany. See ¶71a of Affidavit at Misc. No. 12-342(a); ¶¶48, 66a-b, 68e, and 75 of Affidavit at Misc. No. 12-342(b); ¶¶95, 97a and 106 of Affidavit at Misc. No. 12-342(c); ¶¶137-138, 141a of Affidavit at Misc. No. 12-342(d).  However, CS1 was not able to provide first-hand information on narcotics trafficking by Defendant or several other targets of the subject investigation. See ¶206 of Affidavit at Misc. No. 12-342(d).

CS2 participated in multiple controlled buys of heroin from Co-defendant Germany in said 3 months and was in an apartment in McKeesport with Co-defendant Germany which contained a large amount of raw heroin and packaging paraphernalia. See ¶¶38, 43, 52-63 of Affidavit at Misc. No. 12-342.

CS3 was being used for 2 months, is motivated by potential to receive cash payments for services he renders, and is a heroin user. See ¶¶46 and 47 of Affidavit at Misc. No. 12-342 CS3 has

participated in controlled buys with Diamantia Serrano. See ¶¶64-67 of Affidavit at Misc. No. 12-342.

The Uptown Crew has been characterized as a "close-knit group of criminals who have longstanding personal, familial and criminal ties." See ¶¶64-67 of Affidavit at Misc. No. 12-342. See also ¶¶117-118 of Affidavit at Misc. No. 12-342(a) ¶102 of Affidavit at Misc. No. 342(b); ¶142 of Affidavit at Misc. No. 12-342(c); ¶205 of Affidavit at Misc. No. 12-342(d). Confidential sources/informants and undercover agents are, consequently, unable to sufficiently infiltrate organization. See ¶106 of Affidavit at Misc. No. 12-342; ¶117 of Affidavit at Misc. No. 12-342(a); ¶101 of Affidavit at Misc. No. 12-342(b); ¶141 of Affidavit at Misc. No. 12-342(c); ¶205 of Affidavit at Misc. No. 12-342(d).

While, in the affidavits in support of the applications for phone locations data, CS1 says Defendant travels to New Jersey to bring heroin into Homestead, that information was not corroborated by future events. See, infra. As indicated above, CS1 did not have first-hand knowledge of such trips. It was later determined that an unknown male from New Jersey brings heroin to Pittsburgh for Jay Germany. See ¶¶79-81, 151 of Affidavit at Misc. No. 12-342(d).

Defendant was apparently not intercepted in the wiretaps authorized on September 18, October 18 and November 9, 2012. See ¶¶22-29, 33-55, 57-67 of Affidavit at Misc. No. 12-342(a); ¶¶23-46, 49-65, 87-88 of Affidavit at Misc. No. 12-342(b); ¶¶35-74, 77-85 of Affidavit at 12-342(c); ¶¶ 36-50 of Affidavit at Misc. No. 12-342(d). Pen registers show Co-defendant Germany maintains contact with Defendant and several other people, ¶¶47 and 71c of Affidavit at Misc. No. 12-342(b). Toll and pen register data show Defendant maintains frequent contact with his girlfriend, Shiffon Bristow, and Co-defendants Hardin and Walker. ¶66b of Affidavit at Misc. No. 12-342(b); ¶¶75 and 115 of Affidavit at Misc. No. 12-342(c).

After the first three rounds of wiretaps, Deputy Sheriff Countryman states that law enforcement lacks sufficient information to build a case against Defendant. See ¶164 of Affidavit at Misc. No. 12-342(c); ¶149 of Affidavit at Misc. No. 12-342(d).

Intercepts of Bryce Harper's phone (Target #5) revealed that James Walker said he was getting heroin from his nephew (who he did not identify by name), but both Joseph Thompson and Defendant are nephews of Mr. Walker. See ¶97b of Affidavit at Misc. No. 12-342(c); ¶¶97-98, 103 of Affidavit at Misc. No. 12-342(d).

Joseph Thompson, II was observed in drug transactions, but not Defendant. See ¶¶48 and 181 of Affidavit at Misc. No. 12-342(d). Defendant was not seen buying packaging or cutting materials. See ¶86 of Affidavit at Misc. No. 12-342(c). Communications involving Joseph Thompson, II regarding the purchase/delivery of heroin were intercepted—see ¶¶97, 100c, 101i, and 107 and 164 of Affidavit at Misc. No. 12-342(c); ¶¶141b-c, 145b-c of Affidavit at Misc. No. 12-342(d)—but no such communications were apparently intercepted regarding Defendant.

Law enforcement believed Defendant was involved because he shared a key with three other people (Joseph Thompson II, James Walker and James Walker's girlfriend) to the residence of James Walker and James Walker's girlfriend at 417 Eleanor Street, Pitcairn, PA. See ¶¶52-56 of Affidavit at Misc. No. 12-342(d). However, James Walker is Defendant's uncle and it is not uncommon for such family relations to have a key to the other's residence. In the absence of any firsthand information of drug trafficking behavior by Defendant, this fact is of no consequence.

It was averred that conversations—intercepted on target phones not owned/used by Defendant—to which Defendant was a party were in code and were difficult for law enforcement to understand or decipher. See ¶53 of Affidavit at Misc. No. 12-342(d). In light of how the other subjects of the investigation used decipherable code, it would appear what actually happened was

that Defendant's conversations were on legitimate subjects/matters and investigating agents could not "interpret" any of the content as describing any form of illegal behavior.

Pen register data from Thomas Hopes' phone (Target #9) for the period of September 25 to December 3, 2012 had 10,799 calls and 7,527 text messages and was in contact with 11 individuals, including Joseph Thompson, but not with Defendant. See ¶¶89 and 116 of Affidavit at Misc. No. 12-342(c).

Defendant merely associated with certain family members and neighbors and friends who happened to be the targets of a criminal investigation. There was no probable cause, at any time, to believe that Defendant was a participant in the targets' criminal enterprises or that wiretaps or other investigative techniques or measures would disclose such participation.

Regarding the lack of success of using other investigative measures, law enforcement did obtain vague/cryptic information through a wiretap about a potential heroin stash and processing house and confirmed the location through physical surveillance. See ¶¶88b and 91 of Affidavit at Misc. No. 12-342(b). Law enforcement was able to advance their investigation with less intrusive methods and the inability to obtain information regarding Defendant was not due to the inadequacy or limited viability of other investigative techniques. Rather, law enforcement stubbornly relied on an informant, who lacked firsthand knowledge about the information he provided, to persist in its belief that Defendant was involved in drug trafficking and that a wiretap was necessary because other investigative methods were not corroborating this fact.

To the extent any of the content of a conversation to which Defendant was a party is to be used against Defendant, that matter must be suppressed. While Tehfe instructs that it is not necessary for a particular person to be engaging in wrongdoing in order for the government to obtain authorization to intercept the content of wire/electronic communications, in the instant matter, the

initial—and, clearly, subsequent—applications for such authorization had as its primary focus the obtaining of evidence against Defendant when no significant or reliable incriminating evidence against Defendant was forthcoming through less intrusive investigative measures or even through prior wiretaps of co-defendants.

Defendant had become the focus of the investigation and there was no probable cause to continue the wiretaps to obtain evidence against Defendant when the unreliability of the confidential informants' information against Defendant was apparent and becoming apparent as the investigation progressed.

The orders continuing the wiretaps to obtain evidence against Defendant were not based upon probable cause that: (1) Defendant was engaged in illegal activity or (2) evidence of any such illegal conduct by Defendant would be obtained through the interception of the specified target phones. Therefore, those orders were issued in violation of 18 U.S.C. §2518(3)(a) and (b), respectively.

Accordingly, any intercepted communication to which Defendant was a speaking party thereof must be suppressed and excluded from evidence in the trial in the above-captioned matter.

### C. Tracking Device (CSLI)

The following statute authorizes installation of a mobile tracking device:

> **(a) In general.**—If a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such order may authorize the use of that device within the jurisdiction of the court, and outside that jurisdiction if the device is installed in that jurisdiction.
>
> **(b) Definition.**—As used in this section, the term "tracking device" means an electronic or mechanical device which permits the tracking of the movement of a person or object.

18 U.S.C. §3117 (Mobile tracking devices). See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority, 396 F.Supp.2d 747, 757 (S.D.Tex.2005) (monitoring of

cell site data is not different "from other forms of tracking under 18 U.S.C. §3117, which routinely require probable cause"; "because it is impossible to know in advance whether monitoring of cell site data will invade the target's Fourth Amendment rights, government should seek a search warrant under Pa.R.Cr.P. 41 for such data).

> **(d) Obtaining a Warrant.**
> **(1) In General.** After receiving an affidavit or other information, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device.

Fed.R.Cr.P. 41(d)(1) (Search and Seizure).

An Application and Affidavit for Disclosure of Location Data Relating to a Wireless Telephone was filed/presented, *inter alia*, at the following times at the following cases:

(1)     July 20, 2012 at No. 12-0781M [Affiant: FBI Special Agent Aaron O. Francis; Magistrate: C. Eddy; Target: Verizon Wireless phone 412-235-8713 belonging to Jay Germany];

(2)     October 24, 2012 at No. 12-1038M [Affiant: Agent Francis; Magistrate: R. Mitchell; Target: AT&T phone 412-638-5894 belonging to Brandon Thompson];

(3)     November 15, 2012 at No. 12-1071M [Affiant: Allegheny County Deputy Sheriff Shane Countryman; Magistrate: M. Kelly; Target: Sprint phone 412-414-3656 belonging to Joseph Thompson, II];

(4)     November 30, 2012 at No. 12-1116M [Affiant: Agent Francis; Magistrate: M. Kelly; Target: AT&T phone 202-769-7208];

(5)     December 28, 2012 at No. 12-1038(a) [Affiant: Agent Francis; Magistrate: C. Eddy];

(6)     December 28, 2012 at No. 12-1071(a) [Affiant: Agent Francis; Magistrate: C. Eddy];

(7)     January 16, 2013 at No 12-1116(a) [Affiant: Agent Francis; Magistrate: R. Mitchell];

(8)     January 16, 2013 at No. 13-0046M [Affiant: Agent Francis; Magistrate: R. Mitchell; Target: T-Mobile phone 347-798-3877];

(9)     January 16, 2013 at No. 13-0047M [Affiant: Agent Francis; Magistrate: R. Mitchell; Target: AT&T phone 412-298-0910];

(10)    January 22, 2013 at No. 13-0050M [Affiant: Agent Francis; Magistrate: C. Eddy; Target: T-

Mobile phone 412-482-4974 belonging to Troy Anderson];

(11)     February 8, 2013 at No. 12-1038(b) [Affiant Agent Francis; Magistrate: L. Lenihan]; and

(12)     February 8, 2013 at No. 12-1071(b) [Affiant: Agent Francis' Magistrate: L. Lenihan];

The "CS1" referred to in 8 of said applications purportedly stated that Defendant travelled to New York or New Jersey to obtain drugs and historical cell site location information obtained on September 9, 2012 showed that Defendant travelled to one of those places every 20 to 25 days.  See ¶25b of Application at No. 12-1038M, ¶33b of Application at Nos. 12-1038(a) and 12-1038(b); ¶28b of Application at 12-1071M; ¶34b of Application at 12-1071(a); ¶35b of Application at No. 12-1071(b).

However, by the time of the subsequent applications, the same averment is used but there is no ongoing/subsequent corroboration of that averment—Indeed, Defendant's phone is tracked going to Detroit, Michigan when he leaves the state of Pennsylvania.  See ¶26 of Application at No. 12-1038(a), ¶33c of Application at Nos. 12-1038(a) and 1038(b); ¶28 of Application at No. 12-1071M; ¶¶ 28 and 34c of Application at No. 12-1071(a); ¶¶28 and 35c of Application at No. 12-1071(b).

Pen register information indicates Defendant's phone (412-638-5894) has frequent contact with the phones of co-defendants Hardin (412-224-9719), Walker, and Germany (412-235-8713).  See ¶17 of Application at No. 12-1038M, ¶¶32 and 33d of Application at Nos. 12-1038(a) and 12-1038(b); ¶18 of Application at No. 10-1038(b); ¶28c of Application at No. 12-1071M; ¶34d of Application at 12-1071(a); ¶35d of Application at 12-1071(b).  Toll records for Defendant's phone shows frequent contact with his purported drug couriers, Co-Defendants Hardin and Walker.  See ¶25c of Application at No. 12-1038M; ¶18 of Application at No. 12-1038(a).

Additionally, wire interceptions of Co-Defendant Germany's phone began on September 19, 2012 but said Applications do not reveal any incriminating communications involving Defendant.

See ¶¶18-24 of Application at No. 12-1038M; ¶¶19-25, 28-30 of Application at Nos. 12-1038(a) and 12-1038(b); ¶¶21—27 of Application at No. 12-1071M; ¶¶20-26, 30-32 of Application at Nos. 12-1071(a) and 12-1071(b). See also ¶¶16-30 of Application at Nos. 12-1116M, 12-1116(a), 13-0046M; ¶¶17-33 of Application at Nos. 12-0047M and 12-0050M.

Further, the confidential informant/source referenced in the Applications is motivated by the potential receipt of cash payments for his services. See, e.g., ¶¶30, 38, 39, and 46, 47 to Affidavit at Misc. No. 12-342; ¶15 of Application at Nos. 12-1038M, 12-1038(a), 12-1038(b), 12-1071(a), 12-1071(b); ¶16 of Application at No. 12-1071M.

In light of the foregoing, probable cause is lacking to show that Defendant's phone, or communications or data therefrom or location thereon, is or was likely to provide evidence of the past or future commission of crime by anyone. While Defendant was in the company of his brother--who was seen going to a suspected stash house upon recently returning from Detroit, Michigan and may have made inculpatory statements or engaged in other inculpatory conduct—at times, Defendant was not observed or otherwise detected in participating in or facilitating illegal activity.

The information provided in support of the applications to obtain cell site location information with respect to Defendant's phone directly or indirectly was unfounded suspicion that Defendant was a part of a clandestine organization, the full extent of which was not then known, due to his relation and contact with his brother and due to statements by informants who were "pinched" by police while engaging in illegal behavior and who likely identified Defendant as a participant when questions by police about Defendant's brother.

Defendant's brother appears, from the information presented in these applications, to be just as much of an intermediary in the alleged drug organization as Defendant is claimed to have been but the quality/quantity of evidence of criminal conduct against each is markedly different.

Defendant was not seen at the suspected stash house when he and his brother allegedly returned from Detroit and no inculpatory statements from Defendant were intercepted on a wiretap on any other co-defendants' phone. While the organization appeared to use juvenile "runners" or delivery persons, the higher ranking members of the organization were detected as engaging in suspicious behavior directly and in their own right. Yet, this was not the situation with Defendant.

Defendant was thrown into the dragnet for the purpose of conducting a fishing expedition into one or more organizations or conspiracies which had several participants who were related to one another by familial bonds.

Defendant had a reasonable expectation or privacy in his communications, his location, and other data/information regarding his movements or that of his phones or other communication media such that probable cause was required to intercept or monitor the same. To the extent such data/information was obtained regarding Defendant, probable cause was not established that he facilitated any illegal objectives of one or more persons with whom he had associated.

The lack of probable cause in the affidavits/applications presented to the respective magistrates was a substantial/material defect present on the face of said affidavits/applications such that approval of the searches/seizures requested by law enforcement regarding Defendant exceeded the proper range/scope of discretion which the magistrates possessed when considering whether to grant, deny or limit the requested search/seizure authorizations that the magistrates' orders/warrants cannot be upheld by this Court.

As a result, the evidence obtained from Defendant as a result of the grant of these CSLI/tracking applications must be suppressed and excluded from evidence at Defendant's trial.

### D.  False Affidavit; Franks Hearing

As indicated previously, the affidavits in support of the applications for surveillance of the

location, identity and content of communications conducted on cellular phones are lacking in probable cause. With respect to the warrant to search Defendant's residence and a vehicle in which he was an occupant, material omissions are made in the affidavit in support of the application for said warrant at Nos. 13-144M and 13-145M.

With respect to false statements in an affidavit of probable cause, the United States Supreme Court has held that:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
> \* \* \* \*
> .... There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Franks v. Delaware, 438 U.S. 154, 155-156, 171-172 (1978) (footnote omitted).

The Court of Appeals for the Third Circuit has confirmed that a "Franks hearing" is also required when the misrepresentation is based upon an omission from the affidavit of probable cause.

> A ... challenge[ to] the validity of a search warrant ... that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56, ... (1978). .... This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. See, e.g., United States v. Frost, 999 F.2d 737, 742-43 & n.2 (3d Cir.1993); ....
>
> Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171-72, ...; Frost, 999 F.2d at 742-43; ....
>
> \* \* \* \*
>
> ... when confronted with a false affidavit used to obtain a search warrant, must remove a falsehood created by an omission by supplying the omitted information to the original affidavit. See, e.g., Frost, 999 F.2d at 742-43; United States v. Calisto, 838 F.2d 711, 714-16 (3d Cir.1988). This approach is logical because a literal application of the Franks principle would require a court to excise an omission—or, more accurately, the portion of the affidavit reflecting the omission. .... We again decline to employ such a "mechanistic" view of Franks. See Calisto, 838 F.2d at 715.

Sherwood v. Mulvihill, 113 F.3d 396, 399, 400 (1997) (footnote and citations omitted).

After excluding the false statements, and considering any misleading omissions, review of the affidavit of probable cause in support of an application for a warrant is subject to the following standard of review.

> A reviewing court must determine only that the magistrate judge had a "substantial basis" for concluding that probable cause existed to uphold the warrant. Illinois v. Gates, 462 U.S. [213,] at 238[ (1983)] ....
>
>> We recognize that a different magistrate judge might have found the affidavit insufficient to support a warrant. However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.
>
> .... Although our role in reviewing the magistrate judge's decision is limited, we have explained that deference to the judge's determination "does not simply mean that reviewing courts should rubber stamp a magistrate's conclusions." ....

>In determining whether a "substantial basis" exists for the magistrate judge's decision we must keep in mind the judge's task in authorizing search warrants. "The task of the issuing magistrate is make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, .... In Gates, the Supreme Court stated that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232, .... "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." .... "[S]tatements in an affidavit may not be read in isolation--the affidavit must be read as a whole." .... Furthermore, "The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." .... To uphold the magistrate judge's probable cause determination, we must determine only that the judge had a substantial basis for finding that drug-related evidence would be found in the Monroeville apartment.

United States v. Whitner, 219 F.3d 289, 296 (3rd Cir.2000) (citations omitted).

Instantly, as discussed previously, the affiants to the applications for location/tracking data, call logs and intercepts of the content of communications failed to disclose, at least in the first applications, all relevant information bearing on the credibility/veracity of the informant(s) who identified Defendant as a participant in one or more of the drug-trafficking operations under investigation. People interviewed had often come into contact with police because of their participation in illegal activity. CS1 never had firsthand knowledge of his statements regarding Defendant and there was insignificant corroboration of whatever information he did provide—there was no evidence that Defendant travelled to New Jersey or New York in or after September 2012 and Defendant's interaction with alleged participants in any of the drug trafficking operations was just as likely the result of the fact that he was related to two or more of them and/or the other participants associated with those relatives.

In addition, regarding the affidavit/application at Nos. 13-144M and 13-145M for a search warrant of Defendant's residence at 242 Kenyon Street, Turtle Creek, PA 15145 (and all safes,

computers and telephones located therein) and the Pontiac G6 automobile (PA registration GKA-4557 and all bags, containers, telephones, and safes located therein) in which Defendant was a passenger, said affidavit/application is based upon information obtained through orders/warrants issued on the intercept affidavits/applications and the affiant, Agent Francis, states he is aware of other information not disclosed in the affidavit/application for a warrant to search said residence and vehicle. See p. 3 (at ¶2) of Affidavit/ Application at Nos. 13-144M and 13-145M.

Information omitted includes what the arrested informants were offered in exchange for providing information—the informant could have been asked to set up another individual in order to avoid prosecution and/or gain favorable treatment with respect to the matter for which said informant was arrested. Additionally, the fact that Defendant had a key to what was suspected to be a stash house is of little import when considering that the house was the residence of an older relative (his uncle) and three other people had access to that house (making it less likely that Defendant would know the contents of the house, especially since Defendant did not reside there). The fact that there was confusion exhibited in one or more intercepted communications when Defendant was in possession of the key indicates that it was unusual for Defendant to be in possession of that key.

Defendant has a reasonable expectation of privacy in said Pontiac vehicle as he and his brother make use of it. See ¶4 (at p. 4) of Affidavit at Nos. 13-144M and 13-145M. In said Affidavit, the affiant indicates that Defendant went to Detroit, Michigan, which is a source city for narcotics, but does not mention that the informant's tip that Defendant procures drugs from New Jersey or New York—which tip has proved inaccurate since in or about September 2012. See ¶6a of Affidavit at Nos. 13-144M and 13-145M

The investigation relative to Defendant was based primarily on information obtained from

informants which, when presented in the initial affidavits, turned out to be stale and then, in select affidavits in support of later applications, inaccurate information (i.e., Defendant's trips to New York or New Jersey) from informants is omitted.

Further, evidence that the informant had been recently arrested or the existence of other circumstances (i.e., a pending criminal case, animosity toward Defendant, etc.) indicative of the informant seeking favorable treatment with respect to a pending criminal case or otherwise having a motive to lie is information material to a determination of whether probable cause exists for issuance of a search warrant of Defendant's residence.

Therefore, a <u>Franks</u> hearing is mandated and, thereafter, the evidence recovered from the intercepts of wire, electronic and oral communications and the search of Defendant's residence and said Pontiac G6 which he made use of, and the fruits derived from said evidence, must be suppressed.

**WHEREFORE**, for the reasons set forth above and in the Motion to Suppress, Defendant respectfully requests that this Honorable Court grant said Motion.

Respectfully submitted,

  /s/ Douglas Sughrue
Douglas Sughrue, Esquire
428 Forbes Avenue, Suite 2400
Pittsburgh, PA 15219
(412) 391-0123
dsughrue@crosbysughrue.com